[No. 3693.]

THE ALTA INVESTMENT CO. v. WORDEN.

25 215
19a 340
25 215
20a 361

1. APPELLATE PRACTICE—EXCEPTIONS—MOTION FOR NONSUIT.
The rule that precludes the supreme court from examining the evidence as a whole to determine whether or not it is sufficient to sustain the judgment, when no exception to the judgment is saved in the bill of exceptions, does not prevent the court from considering plaintiff's evidence to determine whether or not defendant's motion for nonsuit was properly decided.

2. MOTION FOR NONSUIT—EXCEPTIONS—WAIVER.
An exception taken to the overruling of a motion for nonsuit at close of

plaintiff's testimony is not waived by the introduction of evidence by the defendant, unless defendant's evidence cures the defect in plaintiff's evidence.

3. PRINCIPAL AND AGENT—COMMISSION.

The mere fact that a principal sold to a purchaser produced by his agent, did not of itself entitle the agent to commission, where in attempting to make the sale the agent exceeded his authority, and the buyer produced was upon different terms than those prescribed by the authority under which he acted.

4. APPELLATE PRACTICE—EXCEPTIONS—EVIDENCE—INSTRUCTIONS.

Where no exception is saved to a judgment in the bill of exceptions, the evidence may not be examined for the purpose of determining whether it is sufficient to sustain the judgment, but it may be examined for the purpose of determining whether the court properly submitted the case to the jury under appropriate instructions.

5. PRINCIPAL AND AGENT—COMMISSION—AGENT'S BAD FAITH.

The mere fact that a principal repudiated his agent's contract and subsequently made a sale satisfactory to himself to the same purchaser, did not entitle the agent to commission, if the agent's contract was repudiated on account of his bad faith, and acts in excess of authority. The agent's compensation depends upon his conduct, his good faith and the effect of his infidelity, and departure from instructions, upon the interest of his principal. And instructions to the jury which failed to embody this principle, where the evidence justified, were erroneous.

6. SAME—AGENT REPRESENTING BOTH PARTIES.

In an action by an agent for commission, it is competent to show in defense that the agent acted in antagonistic capacity as agent for the buyer and seller without the knowledge of his principal.

7. PRACTICE—PLEADING—EVIDENCE—OBJECTIONS.

When evidence is objectionable only because the pleadings do not raise the issue, the objection and ruling of the court should be placed upon that ground, so the party offering the evidence may have an opportunity of applying for permission to amend his pleading.

*Appeal from the District Court of Las Animas County.*

Messrs. WOLCOTT & VAILE and Mr. MORTON E. STEVENS, for plaintiff in error.

Mr. JOHN A. GORDON and Mr. J. J. HENDRICK, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The complaint alleges a written appointment of plaintiff by defendant company as its agent to sell a herd of cattle and horses; the procurement of a purchaser by plaintiff upon the terms prescribed by defendant; the failure of defendant to pay the fixed compensation, except the commission of $750, and a prayer for judgment for $3,750, as a bonus due under an express contract therefor.

The plaintiff below, appellee here, recovered a judgment against the appellant, as defendant, in the sum of $2,665.90. At the trial questions were raised concerning the authority of defendant's manager to bind it by the alleged contract, and whether the writing in question was anything more than a naked option. Were it material, upon this review, it might be difficult to find any sufficient evidence to establish the authority of defendant's manager to appoint plaintiff as agent to sell. But for the purposes of the first proposition considered in the opinion, and for that purpose only, and not as an expression of our own views upon controverted propositions not expressly decided, though mooted here as well as below, we shall assume that the contract upon which plaintiff rests his right to recover is a valid contract of the defendant.

Our examination of the record satisfies us that the judgment ought not to stand for several reasons, which we proceed to state:

1. At the close of plaintiff's evidence defendant moved for a nonsuit, but the motion was overruled, and an exception taken to the ruling. Defendant then introduced evidence in its own behalf, and after the verdict filed a motion for a new trial, in which, among other grounds, was one that the court erred in overruling its motion for a nonsuit. This motion for a new trial was denied, and to the order the defendant excepted. Neither to the order overruling the motion for a new trial, nor to the judgment entered upon the verdict does it appear, from the bill of exceptions, that any exception was preserved, although there is a recital to that effect in the record proper. This latter method of saving exceptions is not sufficient under our practice.

In this state of the record appellee contends that we cannot examine the evidence with a view to determine its sufficiency to support the verdict. Assuming that we are precluded, for the reason mentioned, from examining the evidence, as a whole, for the purpose suggested, it does not follow that this failure of the appellant prevents us from considering plaintiff's evidence with a view to determine whether the motion for a nonsuit was properly decided.

We are, however, cited to *Union Pacific Ry. Co. v. Callaghan*, 161 U. S. 91, and *Hansen v. Boyd*, ibid. 397, to the proposition that when the defendant introduces evidence after an incorrect ruling of the trial court denying his motion for a nonsuit, the error is thereby waived. These, and other cases in that court are to the effect that an exception to the refusal of the trial court to instruct the jury to find for the defendant is waived, if made by defendant without resting his case. But a motion to direct a verdict for the defendant is quite different from a motion for a nonsuit. The former is a judgment upon the merits, and may be pleaded as a bar to a subsequent suit on the same cause of action between the same parties, while the latter is not *res adjudicata* of the merits at all. *D. & R. G. R. R. Co. v. Iles, ante*, p. 19. By repeated decisions of this court it is settled that it is only where defects lacking in the plaintiff's proof are supplied by the evidence of defendant that the latter waives an exception to an erroneous ruling denying his motion for a nonsuit. The converse of this proposition must be true, that if the defendant's evidence does not supply these defects, then, after judgment, and upon review here, the defendant may assign as error the erroneous ruling in question, if he has, in other respects, properly saved the point. *Railway Co. v. Henderson*, 10 Colo. 1; *Horn v. Reitler*, 15 Colo. 316; *Jackson v. Crilly*, 16 Colo. 103; *Weil v. Nevitt*, 18 Colo. 10.

Since our examination of the defendant's evidence, made with a view to ascertain if it supplies defects lacking in the plaintiff's proof, satisfies us that in no wise is plaintiff's case thereby aided, the ruling of the trial court in denying the

motion for a nonsuit is properly presented. This necessitates a careful examination of all the evidence introduced by the plaintiff.

It is conceded by the appellee that, if he recovers at all, it must be upon the express contract alleged in the complaint, and not upon a *quantum meruit*. The alleged contract is evidenced by a letter of date April 3, 1895, in form a mere option, addressed to the plaintiff, and signed by W. H. Wilder, who was the general manager of the defendant company, although he does not purport to sign as the general manager, or use the company's name. In this option the plaintiff is promised, as a compensation, twenty-five cents per head for all stock sold up to the number of 3,000, and also a bonus of $1.00 per head up to 3,000 head, if a sale is made by the 10th day of April following; and if all the cattle and horses are sold at $14.00 a head, delivery to be made on a certain section of land in Las Animas county, Colorado; payment to be cash, or gilt edge notes bearing interest at the rate of eight per cent per annum, and at least $3,000 of the purchase price to be paid in cash at the time of the sale.

Turning now to the testimony of the plaintiff himself, we find that, after having recounted the representations made to him by Mr. Wilder concerning his authority to sign the contract, he proceeds by stating that he commenced negotiations for a sale with the Columbia Land and Cattle Company, and in the forenoon of the 10th day of April sold to it the cattle at $14.00 a head, and that the sum of $4,200 was paid upon the contract price, which he deposited in his own name as trustee in the Denver National Bank, where it was held, subject to his order, and that after the sale he notified Mr. Wilder by telegraph and afterwards confirmed the same by letter.

He then states that about the 20th of April he went to Trinidad to see about the delivery of the cattle in company with Mr. Holley, the manager of the vendee, and Robert Gillespie, its foreman. He was then asked if he made any further contracts between the defendant and said vendee, to

which he replied that Mr. Holley and Mr. Wilder, the managers respectively of the two companies, did make a contract for the sale of cattle, in which he (plaintiff) took no active part, except that he paid to the defendant company on their contract $4,200 (which sum had theretofore, under the contract of April 10, been deposited in his name, as trustee, in the Denver National Bank), after deducting the sum of $750, which he claimed to be due him as his commission. He further testifies that the $750 was the only compensation that he received from the defendant for his services in effecting the sale.

This is, in substance, his testimony in chief. Upon cross-examination he testified that before he got this option from the defendant he was representing the Denver National Bank with a view to making a sale to Wilder of a sawmill which the bank had been obliged to buy in at a foreclosure sale. The contract which he claims to have made on the 10th of April for the sale of this stock described the cattle as Herefords and Shorthorns. It provided, also, for their delivery in Otero county. When brought to its attention the defendant company denied Wilder's authority to appoint plaintiff its agent to sell, and that the plaintiff was its agent for any purpose. It sufficiently appears, also, that the company could not carry out the alleged contract of sale because its herd of cattle were not Herefords and Shorthorns, that Wilder's option to plaintiff did not so describe them, and that the place of delivery provided therein was different from that specified in the option; and it further appears that the plaintiff himself knew that at least some of the cattle were not Herefords and Shorthorns, as he described them to be in the contract of sale. The Columbia Land and Cattle Company refused to receive the cattle because they were not of the grade contracted for, and because the owner refused to deliver them at the place specified, in the contract of sale as drawn by plaintiff.

With respect to the $750, which the plaintiff claims was paid him as commission, that sum was advanced to him as a

loan by defendant company, and the latter expressly dis-
claimed that it was being paid as a commission, and denied
plaintiff's right thereto; but the plaintiff in his complaint,
and at the trial chose to regard this as his commission, and
gave the defendant credit for it.

It therefore clearly appears that neither the alleged vendor
nor the proposed vendee was satisfied with the contract of
April 10, which was brought about by the plaintiff; the
vendor upon the ground that the plaintiff had not pursued
the terms of his authority, and the vendee that the grade of
cattle was different from that represented and not of as good
quality, and the place of delivery was different. Because of
the excess of his alleged authority, and for other reasons,
defendant repudiated plaintiff's claim of agency, and sold to
the same purchaser with whom plaintiff unsuccessfully nego-
tiated, under an entirely different contract, both as to the
price and place of delivery, and under this subsequent deal,
the cattle were delivered.

It also appears that, under the contract of sale of April 10,
there was a controversy or a misunderstanding between vendor
and vendee as to a sawmill,—the defendant company claim-
ing that it was not to be considered as part payment of the
purchase price under the sale, while the plaintiff, either as
defendant's agent, or as representing the vendee, claimed the
contrary; or, at least, that, at his election, he could compel
the defendant company to take the sawmill at $9,000 as
part of the purchase price of the cattle, in which event he
had no right to the bonus, but would look for his compensa-
tion in excess of $750 commission to the owners of the saw-
mill; but if he relieved defendant of its contract to take the
mill, which he says he did, he was entitled to the bonus as
the option provided.

The foregoing, in substance, is all of the testimony intro-
duced by the plaintiff that in any way bears upon his perform-
ance of his duties as agent under his alleged contract with
the defendant.

The mere statement is, to say the least, enough to show

that the plaintiff exceeded his authority. He had no right
to sell, or contract for the sale of, Hereford and Shorthorn
cattle, or to agree to deliver them except in Las Animas
county. But the contract of sale he made with the Colum-
bia Land and Cattle Company was for Herefords and Short-
horns, and the place of delivery was Otero county. His
principal did not agree to sell that grade of cattle, or to de-
liver them elsewhere than in Las Animas county. The bonus
provided in the option could be earned only by a full, or sub-
stantial, compliance by the plaintiff, within the time limited,
of the things which he agreed to do. He did not procure a
purchaser able, ready and willing to buy upon the specified
conditions. So, upon his own showing, he was not entitled
to this bonus by reason of making a sale himself, and upon
the case made by his own evidence he was not entitled to a
verdict under the complaint. It follows that the nonsuit
should have been granted.

In view of plaintiff's own evidence that he did not keep
within his authority, and did not procure a purchaser able
and willing to buy upon the prescribed terms, the mere fact
that subsequently his principal sold to the purchaser whom
he produced, is not, of itself, sufficient to warrant a recovery.
Cases may be found containing general expressions indicating
that, in such a case, a recovery may always be had; and the
rule may have been correctly laid down in these cases, as in
*Howe v. Werner*, 7 Colo. App. 530. But, as shown in *Babcock
v. Merritt*, 1 Colo. App. 84, where an agent does not sell, or
has been unable to produce a buyer upon the prescribed
terms, the owner may, in some circumstances, make the sale
himself to the proposed purchaser without incurring liability
to his agent for compensation.

2. It is upon this ground, however, that appellee predicates
his right to a recovery of the bonus, and it would appear that
upon this theory the trial court submitted the case to the
jury. In considering this phase of the case we are at liberty
to examine all the evidence, both that of plaintiff and defend-
ant, not to pass upon its sufficiency, but to ascertain if the

court properly submitted the case to the jury, under appropriate instructions. It is pertinent here to observe that before the plaintiff ever approached the Columbia Land and Cattle Company in regard to the sale of these cattle, negotiations had been entered upon between it and the defendant company for their purchase by the latter.

One of the defenses sought to be interposed was this: The defendant maintained that twenty-five cents per head was the usual and ordinary commission for selling stock; that the $1.00 bonus provided in the option, as an additional compensation, was conditioned, in case of sale, upon delivery of the cattle where they were accustomed to run. For if the place of delivery required that the cattle should be driven therefrom to some other point, the cost thereof to the defendant would at least equal $1.00 per head. The defendant's claim in regard to this (which the evidence sought to be introduced would tend to establish) was that the plaintiff violated his duty to his principal in making the contract of April 10, not only in contracting to deliver a grade of cattle which he knew the defendant did not have, but in providing for a place of delivery which would require of the defendant an expenditure of money equal to the bonus which it contracted to give him, *provided* the place of delivery was on their range; and because of this bad faith and excess of authority by the plaintiff, the sale which he attempted to make was not consummated, and defendant was obliged to sell its herd at a less price per head than would have been realized, and under less favorable conditions than would have been secured, had plaintiff done his full duty in the premises; hence plaintiff had forfeited his right to the bonus.

It is true, as a general proposition, that when a broker produces a purchaser able, ready and willing to buy in accordance with the conditions prescribed by the authority under which he acts, he is entitled to his commission; yet it is equally true, and quite essential, that the purchaser produced must be willing to buy on the specified terms; and the principal is not bound to sell except upon the prescribed conditions; and

if the agent departs from his authority, and acts in bad faith,. and not for the best interests of his principal, the latter may refuse to recognize the agent's attempted contract in excess of his authority; and, unless actuated by bad faith, or made as a mere device to escape payment of compensation justly earned, a sale by the principal, upon other and satisfactory terms, may be made to the purchaser with whom the agent first negotiated, without rendering the principal liable to the agent for commissions that he might have earned had he done his full duty to the principal. In other words, the mere fact. that the principal repudiates his agent's contract in excess of his authority, and because of his bad faith (on account of which the sale by the agent falls through) and subsequently makes a sale satisfactory to himself to the same purchaser,. does not entitle the agent to compensation for what he may have ineffectually tried to do, and might have successfully done, had he kept within the limits of his authority. Whether the compensation is earned in such a case depends, among other things, upon the conduct of the agent, his good faith, and the effect upon the principal of his infidelity and depart-ure from instructions.

The fifth, sixth and seventh instructions given by the court. of its own motion are not in accordance with the principles just announced; and while the fault with them may be that. they are incomplete, rather than incorrect, statements of the law, and under a different state of facts might be correct and cover the case, they should have been supplemented by giving such portions of the instructions specifically asked by the de-fendant and such other qualifications, as above indicated, as would make them conform to the true doctrine applicable to a case such as this record discloses. While we are not called upon to frame instructions appropriate to the evidence, yet, in the event of another trial, we deem it proper that attention be called to these instructions with a reference to pertinent. authorities. Mechem on Agency, §§ 214, 615–619, 966–968 ; Wharton on Agency, §§ 332, 336, 345, 346, and cases cited.

We may also add that the first instruction does not accu-

rately distinguish between the commission claimed, and the bonus sued for; and the closing part of the fifth permits a recovery, as upon a *quantum meruit*, which issue is not only not in the case, as plaintiff admits, but if it was, there is not a particle of evidence tending to prove it.

3. Throughout the trial, both in cross-examination of the plaintiff and from its own witnesses, defendant's counsel sought to show that plaintiff was acting in the antagonistic capacity of agent for the buyer and seller, without the knowledge of either. The attempt may have been awkwardly made; the fact may be otherwise; and it may not be free from doubt that under the pleadings such a question was fairly raised. But no such point as the last was made below, nor is it made here; and the objection of the plaintiff to such an attempt, sustained by the court, was the general objection to any such line of inquiry, apparently upon the theory that in a suit to recover a fixed compensation for a broker's services the defense suggested is not good. The ruling of the court in this was wrong, for, in such a case, neither buyer nor seller would be liable to the agent, and the defendant should have been permitted, if it could, to prove any conduct of the plaintiff that showed he was not dealing fairly with his principal. Moreover, if the issues were not such as to justify this evidence, then either the objection and ruling should have been upon this ground, or, if the request is made, the court, upon a proper showing, and in its discretion (if the request appealed to a wise discretion) should allow an amendment to be made to the answer, so as to make the evidence admissible. *Finnerty v. Fritz*, 5 Colo. 174; *Buckingham v. Harris*, 10 Colo. 455; Mechem on Agency, §§ 67, 643, 943, 953; *Deutsch v. Baxter*, 9 Colo. App. 58; 1 Am. & Eng. Ency. of Law (2d ed.), 1101, *et seq.*, and cases cited.

Other questions are raised, some of which are discussed at length by the counsel in their briefs, but the errors committed by the court already mentioned require a reversal, and so other alleged errors, which may not occur if another trial is had, are not considered. It follows that the judgment should

be reversed and the cause remanded with instructions if further proceedings are had that they be in accordance with the views expressed in this opinion.

*Reversed.*