No. 12,402.

Denver Tramway Corporation *v.* Wells.

(9 P. [2d] 927)

Decided April 4, 1932.   Rehearing denied May 23, 1932.

1

Mr. W. A. Alexander, Mr. D. D. Keim, Mr. C. M. Draper, Mr. Gerald Hughes, for plaintiff in error.

Mr. Harry G. Saunders, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Alameda Wells will be referred to herein as plaintiff, while the Denver Tramway Corporation, a corporation, will be referred to as defendant. Plaintiff, while a passenger in an automobile driven by her cousin, was injured in a collision between the automobile and a street car operated by one of defendant's employees. She brought suit, alleging negligence on the part of defendant in the operation of the street car, and, at the trial, judgment upon the verdict of the jury was rendered in her favor. Defendant prosecutes this writ, assigning numerous errors, only one of which we deem it necessary to consider.

The street car was traveling in an easterly direction, while the automobile was being driven in a westerly direction on Larimer street, upon which street there are two street car tracks. At the intersection of Larimer and Twenty-third streets, the street car was making a left hand turn so as to go to its destination which was north-

erly from the intersection. The street car was operated by one man who had brought the car to a full stop at the intersection to take on a passenger, and had then thrown the electric switch, and was proceeding in a northerly direction around the curve. When the front end of the street car had reached a point approximately even with the northerly rail of the second track, the collision occurred. At the close of plaintiff's evidence, a motion for a nonsuit was made and denied, and thereupon defendant offered its evidence, and, at the conclusion of all the evidence, defendant made its motion for a directed verdict, which was also denied. The evidence upon the question of defendant's negligence, as the same was given by plaintiff, who was the only witness called by plaintiff to testify with reference to the collision, was:

"Q. Just take the pointer, Mrs. Wells, and as nearly as you can show about where your car was in reference to the street, how you were going down there? A. This is the track here that turns on Twenty-third?

"Q. Yes ma'am? A. Well, we were coming down, of course I was coming down this track right here, and we were coming right on down to here, when it got right here just right at the track, just as I had to cross the track there was a flash of light flashed in my face and I looked up, just as that light flashed across my face I looked up and I heard that terrible crash, and that is all I knew until the ambulance came for me; and that happened right here at Larimer street and Twenty-third."

[The only mark on the exhibit to which plaintiff referred in her testimony is a cross mark at the point where the switch crosses the northerly track; however, it does show Larimer street to be ninety feet wide with a clear space of eighteen feet north of the point on the northerly track where plaintiff states that the collision occurred.]

\*　　\*　　\*

"Q. Prior to the flash of light which you have just testified to had you noticed the street car? A. I had seen the street car down the street yes.

"Q. If you can, point out to the jury about where the automobile was in which you were riding when you first saw the street car? A. Right here, this intersection.

"Q. The street intersection; that is supposed to be the curb lines here. A. We were just about, I will say I was about in the middle of the block before we got to Twenty-third street.

"Q. Where was the street car then? A. Well it was coming up along in this block on the other side of Twenty-third; I saw the street car coming but I thought no more about it, did not—

\* \* \*

"Q. Do you know whether or not the street car stopped at any time? A. That I could not say.

"Q. Did you hear any sound of any nature or description coming from the street car before this crash? A. No I did not.

\* \* \*

"Q. Would you say then that the motorman of that car sounded his gong or did not sound it? A. He did not sound it.

"Q. Why do you say that; how do you know that he did not? A. Well, because I know if he had sounded it or rung the bell as he should have we could have heard it; there was nothing to keep us from hearing that if he had sounded it.

\* \* \*

"Q. Did you see the motorman make any sign that he was going to turn? A. If I had seen that he would have probably avoided the accident.

\* \* \*

"Q. You were not looking at the street car however at the time or just prior to the time it was struck? A. No."

Cross examination of plaintiff:

"Q. You only saw the street car then twice; first when you were between Twenty-third and Twenty-fourth on

Larimer you saw the car some place on Larimer, is that right—or Twenty-second or Twenty-third, on Larimer? A. Yes.

"Q. And the next time you saw the street car was when you just saw the headlight flash in your face? A. That is right.

"Q. The lights were on on the street car, were they, all the time? A. Yes.

"Q. And they were on when the collision happened, that is, the headlights were on when the collision occurred? A. Yes.

"Q. Did you become conscious soon after the accident to know what the position of your truck or the street car was? A. Not at that time.

"Q. You do not know whether the street car moved on then or not do you? A. I knew nothing after it hit, after it was struck.

"Q. You do not know whether the street car was moving or standing still when the collision occurred? A. All I know is that I saw the flash of the light—

"Q. The only thing you know then, Mrs. Wells, about the actual collision is that you saw this flash of light and then the collision occurred? A. Yes.

"Q. And you know that that flash of light was the street car? A. Yes.

"Q. You do not know anything else about the accident? A. No."

Defendant's motion for a nonsuit was denied, and, if it chose to put on evidence which supplies the defects in plaintiff's proof, no error can be assigned for failure to grant a nonsuit. *Alta Inv. Co. v. Worden,* 25 Colo. 215, 218, 53 Pac. 1047; *Big Kanawha Co. v. Jones,* 45 Colo. 381, 386, 102 Pac. 171; *Conner v. Sullivan,* 84 Colo. 572, 573, 272 Pac. 623.

Defendant's evidence directly bearing upon the accident was:

Thomas R. Waldron, the motorman:

\*　　\*　　\*

6

"Q. So that you stopped at Twenty-third and Larimer? A. Yes sir.

"Q. Go ahead; talk as loud as you can. A. And on entering the curve I noticed the automobile crossing—coming up Larimer street going west, it must have been almost half a block back, and at the rate of speed he was coming, when he was in about a telephone pole away from me I stopped right here and was ringing the gong and at the rate of speed he was coming he come right on into the corner of the car right here, slipped over this track about a foot and a half and he was in the left corner of the front end of the street car.

"Q. Was your car moving or had it stopped? A. I stopped about 15 seconds when the car struck.

"Q. Was there lights on your car? A. Yes sir.

Cross examination of Mr. Waldron:

\* \* \*

"Q. And do you think that that car coming down there, that could see you stopped there, all your lights on, just deliberately ran into you? A. Yes sir.

\* \* \*

"Q. And when you stopped [witness had testified to stopping to take on passenger; turn the electric switch] of course you looked up the street before you turned in to see if there was any automobiles coming, didn't you? A. Yes sir.

\* \* \*

"Q. Do you know what the law is in regard to your turning off from a street to your left as far as traffic is concerned? \* \* \* A. Well, ring the gong and extend the left arm.

\* \* \*

"Q. What do you have to do if there is some one coming and you see them? A. If they are close enough wait for them to pass."

\* \* \*

Mrs. Mattie E. Parkhurst was a passenger on the street car; she testified that the street car was in about the same.

position indicated by plaintiff, the front end of the car being on the northerly track, and that the street car was stopped for a very short time before it was struck.

Ed Delaney was a passenger on the street car; he testified the street car stopped on the northerly tracks on Larimer street; that a short time before the accident the street car stopped to take on a passenger, and went slowly around the switch, and that the lights were burning on the street car when he boarded it.

Nellie Worthman was a passenger on the street car; she testified that the street car stopped before entering the curve to take on a passenger; that the street car was stopped at the time of the accident in about the position indicated by plaintiff.

Margaret Bush was a passenger on the street car; she testified that the car had stopped before entering the curve to take on a passenger; that it was stopped at the time of the accident and that the headlight on the street car was burning.

The evidence herein quoted and summarized was all the material evidence offered by either party with reference to the manner in which plaintiff's injuries were sustained. The ordinance of the City and County of Denver, if any such there is, requiring hand signals and the sounding of gongs and ringing of bells by motormen, when making turns, was not offered in evidence; and no ordinance with reference to rights of way was offered; so that, under the evidence here, the failure to do either, if such there was, could not be negligence per se.

██ Under the evidence in this case, we are led to ask, what is the negligence with which defendant is chargeable? and our answer is, none. The negligence which occasioned the injuries to plaintiff was solely that of the driver of the automobile in which she was a passenger, and the verdict of the jury finding defendant guilty of negligence finds no support in the record. Negligence is never presumed but must be proven by a preponderance of the evidence, by the one alleging it; and,

in this respect, plaintiff wholly failed, and the court erred in denying defendant's motion for a directed verdict. Although not directly in point, but helpful in principle, see: *Globe Indemnity Co. v. Stenger,* 82 Colo. 47, 49 et seq., 256 Pac. 658; *Atchison T. & S. F. Ry. Co. v. Page,* 76 Colo. 10, 11, 227 Pac. 840; *Summers v. Denver Tramway Corporation,* 43 Fed. (2d) 286, 287.

Judgment reversed with instructions to dismiss the action.

MR. JUSTICE BUTLER and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE MOORE did not participate.

MR. JUSTICE HILLIARD, dissenting.

In addition to the testimony quoted in the opinion of the court I call attention to the following evidence given by the motorman on cross-examination:

"Q. Do you know what the law is in regard to turning off from a street to your left as far as traffic is concerned? A. Well, ring the gong and extend your left arm.

"Q. I did not understand you; just take your hand down. A. To ring your gong, extend your left arm in turning a left hand corner.

"Q. Is that all you understand you have to do? A. (No response.)

"Q. What do you have to do if there is some one coming and you see them? A. If they are close enough wait for them to pass.

"Q. Did you do that in this instance? A. Well he was about 150 feet down the line when I was coming around the curve. * * *

"Q. You do not contend that the truck in which she was riding was on the wrong side of the street, do you? A. No sir.

"Q. It was on its own side of the street? A. Yes sir.

"Q. You do not contend that you did not turn to the left off of Larimer street—you did turn to the left across where this car was coming? A. Yes sir.

"Q. And you say that you stopped before the accident? A. Yes sir.

"Q. Or at the time of the accident? A. I stopped about 15 or 20 seconds before.

"Q. You stopped 15 or 20 seconds befort the accident? A. Yes sir.

"Q. How fast would you say that the truck was going? A. Between 30 and 35 miles an hour.

"Q. Then during the length of time after it was stopped if it was going 30 miles an hour, you stopped 15 seconds, it traveled over a thousand feet, did it? A. No sir.

"Q. You are mistaken about that, weren't you, Mr. Waldron? A. Did not travel over a thousand feet.

"Q. You did tell your claim agent that at the time your car was stopped to take on a passenger that you saw this truck about 200 feet away, did you not?

"Mr. Keim: I object to that on the ground that it is hearsay; that there is no evidence introduced to that effect.

"The Court: Well, I think this is proper cross examination. He gave some testimony himself on direct, which I think, as I recall it, stated that he saw this car when it was perhaps half way down the block. I think that is substantially what he said. If there is any question about it the jury will recall as well as you or I.

"Q. What about that, you testified on your direct examination when the car was stopped you had taken on a passenger, that you saw this automobile coming before you started up again, didn't you? A. I do not remember.

"Q. Well do you remember now; did you see the car before you started up or after? A. After I started.

"Q. You did not look at all before you started? A. Yes sir.

"Q. Sir? A. Yes sir.

"Q. You say you had your lights on didn't you? A Yes sir.

"Q. If you looked before you started then why didn't you see it? A. (No response).

"Q. Was it because you were observing the passenger that was getting on the car? A. No sir.

"Q. Why didn't you see it? A. I seen him coming.

"Q. How far away was it when you saw it? A. About half a block.

"Q. About 200 feet? A. (No response).

"The Court: How far away would you say it was, Mr. Waldron?

"The Witness: When I started to turn the corner?

"The Court: No when you first saw the car coming, and you stated you were standing still or about to stop.

"The Witness: I judge it was about in the middle of the block.

"Q. That is the block between Twenty-third and Twenty-fourth on Larimer street? A. Yes sir.

"Q. It was about there when you were standing still before you started? A. No, not before—

"Q. Before you started? A. Just after I started.

"Q. Then you stopped 15 seconds? A. Before it hit.

"Q. Fifteen or 20 seconds I thought you said; which was it? A. Between 15 and 20 seconds."

Although it is stated in the opinion of the court that plaintiff was a passenger in the automobile, and not the driver, the importance of that fact has not, I think, been given deserved consideration. When plaintiff first saw the street car it was proceeding easterly on Larimer street on the right side, while the machine in which she was riding was going in the opposite direction on its right side, both the car and automobile occupying lawful positions. There were two tramway tracks on Larimer street, extending for many blocks both easterly and westerly from Twenty-third street, the scene of the accident. It was in the night. The street car stopped at the intersection of Larimer and Twenty-third and took on a

passenger. The motorman saw the automobile coming from the opposite direction, down the other Larimer street tramway track. The ultimate destination of this particular street car required that at that intersection it be turned to the left, although had the destination been otherwise it would have proceeded on the extended Larimer street track, or straight ahead from where it had stopped. Had that been so the collision could not have occurred. The motorman knew that he was to turn to the left and across the pathway of the oncoming automobile, while plaintiff testified that she did not know such turn was to be made or that there was a car track on Twenty-third street. Neither was there evidence to the effect that the driver of the automobile knew or should reasonably have surmised that the street car was to turn. But, assuming that the automobile driver did know that this particular street car was to turn across the line of his travel, or without such knowledge should have observed what was occurring in that regard, and by the exercise of a proper degree of care could have avoided the collision, nevertheless, if defendant's negligence was fairly inferable plaintiff's recovery could not be precluded, for the driver's lack of care in the circumstances here cannot be imputed to plaintiff. *Denver Tramway Co. v. Gentry,* 82 Colo. 51, 256 Pac. 1088; *Campion v. Eakle,* 79 Colo. 320, 246 Pac. 280; *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22.

The court fairly submitted the question of defendant's alleged negligence to the jury. I think the testimony required such submission. As we have seen, the motorman stopped his car to pick up a passenger at a point where, when he next would proceed, he must go to the left and cross the path of the approaching machine. In making such turn the motorman's chief concern would necessarily be as to what he might encounter coming from his right (or front), for from the rear vehicles would not be expected to pass the street car on its left. In any event, no reasonable rule would absolve him from

exercising care in making the turn. He said himself that "if they are close enough I wait for them to pass." There was evidence from which the jury could fairly infer that the motorman saw the automobile coming within such a distance and at such a speed that prudence would have prompted the moment's delay allowing it to pass would have entailed. And if he did not see the approaching automobile there was involved a question of carelessness clearly of jury cognizance. The trial court did not feel warranted in holding as a matter of law that defendant was not guilty of negligence and declined to set aside a jury finding that it had been negligent. I find nothing in the record justifying determination otherwise. It is my opinion that the judgment should be affirmed.

Mr. Justice Butler, dissenting.

I concur in my brother Hilliard's dissenting opinion.

The motorman admitted on oath that it was his duty to sound the gong. He said that he performed that duty. The plaintiff, however, testified that the motormon did not sound the gong; that if he had done so, she could have heard it; that there was nothing to keep her from hearing it if it was sounded; and that she did not hear it.

The language of the court in *Globe Indemnity Co. v. Stenger,* 82 Colo. 47, 256 Pac. 658, cited by counsel for the plaintiff in error, is not applicable to the facts now before us. In the present case the plaintiff's testimony went beyond a mere statement that she did not hear the gong.

Nor are the cases of *Atchison, T. & S. F. Ry. Co. v. Page,* 76 Colo. 10, 227 Pac. 840, and *Griffith v. Denver Tramway Co.,* 14 Colo. App. 504, 61 Pac. 46, cited by counsel for the plaintiff in error, controlling here. There is a marked difference between the situation in those cases and the situation in this case. In the present case the car was not approaching in a course that would intersect the automobile's line of travel, but in a course that, if continued, would not do so. The approach of the

car from the west, on the south track, was an assurance of safety, not an indication of danger, to those coming from the east, on the north side of the street. But a few seconds intervened between the car's sudden change of direction and the collision. The motorman knew that the driver of the automobile had but a few seconds' notice of the fact that the lines of travel of the two vehicles would intersect. The motorman knew that it was his intention to leave the south track and proceed north across the line of travel of vehicles coming from the east—an abrupt change in direction—and that drivers of vehicles coming from the east would know nothing whatever about his intention to suddenly change his course. The motorman is required to give notice of such intention by sounding the gong. Whether the motorman did or did not perform that duty was a question of fact for the jury. Their verdict, in effect, was a finding that he did not do so. That finding, based as it was upon conflicting evidence, should not be disturbed by this court.

For the reasons stated herein and in my brother Hilliard's dissenting opinion, the judgment, it seems to me, was right and should be affirmed.